## SELF et al. v. HARDGRAVE et al.

No. 15862—Opinion Filed Jan. 26, 1926.

(Syllabus.)

**1. Attorney and Client—Fees—Percentage of Final Recovery in Suit Pending.**

Under sections 4102 and 4103, C. O. S. 1921, if a lawyer contracts for a percentage of the final recovery. in a certain suit or cause of action which is then pending, and said cause goes to final judgment on the merits, then the amount of recovery the lawyer can secure is governed thereby.

**2. Same—Percentage of Recovery in Suit to be Filed—Liability of Party Effecting Compromise with Client.**

But if the contract is made for a percentage of recovery in a suit by such lawyer to be brought, and the amount for which the suit is to be filed is not specified, and the intended defendants make settlement with the client before such intended suit is brought, the recovery of the attorney in a suit on his contract against the persons he intended to sue, had he not been precluded by the settlement, must be based upon competent evidence as to the amount he would have probably obtained but for the settlement.

**3. Same—Case.**

Held in the instant case, the plaintiffs can recover only $225.

Error from District Court, Pushmataha County; George T. Arnett, Judge.

Action by H. L. Hardgrave and Grady Lewis against Ola May Self, nee Williams, T. H. P. Smith, W. D. Hastings, J. H. Welch, E. A. McGowan, and Dan Bryant. Judgment for plaintiffs, and defendants bring error. Reversed with corrections.

Welch & Welch and Varner & Taylor, for plaintiffs in error.

R. H. Stanley, for defendants in error.

BRANSON, V. C. J.      H. L. Hardgrave and Grady Lewis sued the defendants, T. H. P. Smith, W. D. Hastings, J. H. Welch, E. A. McGowan, and Dan Bryant, on an attorneys' contract. They invoke sections 4102 and 4103, C. O. S. 1921, as construed in Orwig v. Emerick, 107 Okla. 134, 231 Pac. 234. They recovered a judgment approximating $2,000. The defendants seek to reverse it in this court on numerous grounds, on more than one of which we think they should prevail.

A brief statement or resume of the facts disclosed by the record is necessary. Ola May Williams, now Self, was married before she reached her majority, to Arthur Self. She had some property, by reason of the fact that she was a citizen of the Choctaw Nation. Her husband was appointed her guardian, the defendants signing his guardian bond. In this suit they are referred to as defendants; in the previous suit as bondsmen. In the early part of July, 1922, Arthur died. On July 29, 1922, on petition filed by the ward, a citation was issued to the defendants as bondsmen of the guardian to file a report and render an account. This citation was complied with on the 30th day of August, thereafter. On the 14th of September, thereafter, the ward, Ola May Self, made a contract with the plaintiffs to represent her on a contingent fee basis. On October 1, 1922, the plaintiffs, representing the ward, filed in the county court objections and exceptions to the account filed by the bondsmen. The hearing on said objections and exceptions was had on the 15th of November, thereafter, at which hearing the plaintiffs, as attorneys for the ward, appeared. The county court found a balance due from the guardian (deceased) in the sum of $5,498.95. From this judgment, the bondsmen appealed to the district court. In the interim between filing objections and exceptions to the report and the trial of same in the county court, and specifically on the 7th day of November, 1922, the plaintiffs notified the defendants of their contract, and that they had a lien of 50 per cent. "upon the claim and cause of action of said Ola May Self, nee Williams, against you, growing out of balance due her from her former guardian, Arthur Self, deceased, by reason of which said Ola May Self, nee Williams, claims from you and will bring suit for the recovery of $6,832.50; said lien is claimed by virtue of a contract in writing executed on the 14th

day of September, 1922. * * *" (Stress is laid in the argument upon that part of said notice to the effect that she **will bring suit** for the recovery of the sum, and for that reason particular attention is called to it at this point.)

Before the appeal was called for trial in the district court, a stipulation was entered into between the defendants and the said ward, in which she agreed that the remainder due from her husband (former guardian) to her was $450. The execution of this stipulation was not known to the plaintiffs in the instant action until the appeal of the bondsmen was called for trial in the district court. The stipulation having been filed in the district court, the plaintiffs moved, on behalf of themselves and Ola May Self, to strike the stipulation. The district court sustained this motion, and stated that it would hear the evidence and make a finding on the contentions of the parties. The cause then proceeded to trial in the district court. Ola May Self was called as a witness, and under oath gave her testimony as to the various and specific items of receipt and disbursements made by her guardian. The district court, by Judge Barrett, presiding, made specific findings of fact as to the various items received by the deceased guardian, and as to the various items expended for the benefit of the ward, and after so restating the account, found specifically in his formal journal entry of judgment, after reciting the various items received and the various items expended, that there was only due the ward the sum of $450. The formal journal entry of judgment concluded by a recitation to the effect that, since the ward agreed that the finding of the court was correct, and that she had received that amount from the bondsmen, the county court be directed to enter its order approving the guardian's final account, as in the judgment of the district court stated and balanced, and discharged the bondsmen. From this judgment of the district court no appeal was taken.

In the instant suit by the attorneys on their said contract against the defendants, their position as disclosed by their pleading is that but for the stipulation entered into by the ward with the bondsmen, they would have brought an independent action in a court of equity for an accounting, which they intended to do, and would have recovered $6,832.50 for their client, and by reason of their contract, had they been permitted to bring such suit, they would have received $2,277.59, and for that amount they prayed judgment herein.

The contention of the defendants, on the other hand, among numerous others, is that the judgment of the district court on appeal found that only $450 was due the ward from the guardian, and it is not only binding on the ward, but binding on her attorneys, and that they under no condition were entitled to any judgment against the defendants in the instant suit in excess of $225.

To repeat, the basis of this action is the said attorneys' contract. Certain language therein which refers to the service to be rendered by the attorneys is indicative of what was in the minds of the parties at the time the contract was entered into, and is important in view of the contention made by them in this court. The particular language of the contract referred to is (omitting the preliminaries) "That the said party of the first part (Ola May Self—our's) has employed the parties of the second part (the plaintiffs in the instant suit—our's) to manage and prosecute **a certain suit and cause of action** in her behalf. * * *" We feel that language such as this, in a measure ambiguous, may be clarified by the action of the parties in interest. It must be noted that the date of this contract was September 14th, a few days after the bondsmen had responded to the citation and filed in the county court their report. While the petition for citation filed in the county court on the 29th day of July does not on its face bear the name of the plaintiffs or any other attorney, yet in the instant suit one of the plaintiffs testified that the plaintiffs caused the citation to issue. Taking that substantive evidence as true, the plaintiffs drew the petition for citation, which was filed in the county court, upon the bondsmen, omitting their names therefrom, and, after the bondsmen had filed a report which showed all the money received by the guardian expended for the benefit of the ward with the exception of a few dollars, it was then that the contract bottoming this action was entered into, which contract specifically states that they were to manage and prosecute **a certain suit and cause of action in behalf of the ward.** Thereafter, as stated above, they filed exceptions to this report, appeared in the county court on November 15th, thereafter, when the report and the exceptions were heard. When the bondsmen appealed to the district court, they were there ready for trial on the date set. They were thus **managing and prosecuting a certain suit.** No independent action was brought in a court of equity, although the contract was in September, 1922, and the judgment of the district court on appeal was not entered until the 3rd day

of May, 1923. We think it is fair, therefore, to conclude from this language of the contract and the action of the plaintiffs that the suit or cause of action which was in the minds of the contracting parties was the accounting proceeding filed in the county court, and pending when the contract was made, and which found its termination by the judgment of May 3, 1923, in the district court. If this construction be correct, then the recovery had in the district court in that proceeding would be that as to which they contracted and by which the contract fee would be determined, and the sum would be $225.

But and if, on the other hand, the contract is susceptible of the construction for which plaintiffs contend, i. e., that it was for 50 per cent. of a judgment which might be secured by their efforts against the bondsmen of the deceased guardian in a proper proceeding for the determination thereof, which proceeding was, subsequent to the contract, to be instituted and carried on to final termination by the plaintiffs as attorneys for the ward, then the question would arise as to the correctness of the position taken in this court by the plaintiffs, to the effect that the county court had no jurisdiction and the district court on appeal had no jurisdiction to render a judgment finding the amount due by a deceased guardian. It may be conceded in this connection that the law of this state is settled to the effect that such a judgment can properly be obtained only in a court of equity, and that the probate court had no jurisdiction. Southern Surety Co. v. Hatch, 81 Okla. 36, 196 Pac. 542; Title Guaranty & Surety Co. v. Burton, 67 Okla. 320, 170 Pac. 1170. It does not follow, however, by conceding that the probate court had no jurisdiction, that the district court was without jurisdiction on appeal from the county court to determine the issues raised, the same having been tried therein without objection as an accounting proceeding. This for the reason that the district court is possessed of full equity powers, and here they would have presented their case, if they had instituted it as an original proceeding in equity, which they contend was their purpose in taking the contract. For while it is settled that the county court had no jurisdiction, as mentioned above, it is equally well settled in this jurisdiction that where the district court has original jurisdiction of the subject-matter, and the case or cause comes into the same improperly by appeal, and the parties go to trial on the pleadings before the court without objecting to its jurisdiction, the question as

to the manner of invoking the power of the court to act is waived. School District No. 94, Grant County, v. Gautier, 13 Okla. 194, 73 Pac. 954; State Nat. Bank of Oklahoma City v. Wood, 43 Okla. 251, 142 Pac. 1002; Curlee v. Ruland, 56 Okla. 329, 155 Pac. 1182; Wayne et al. v. Alspach et al. (Idaho) 116 Pac. 1033.

We fail to find in the record anything other than that the plaintiffs, as attorneys for the ward, were present in the district court for trial when this matter which arose improperly in the county court was regularly reached in the district court, in May, 1923. No objection was made to the district court trying the matter, and no question as to its want of jurisdiction was presented. On the contrary, when the stipulation became known to the plaintiffs, a motion was made to strike the same, which was by the district court sustained. Testimony was taken; the ward was called by the bondsmen and used as a witness. A recovery was had by the judgment of the district court of $450. This became a finality. Had the plaintiffs, at the will of the ward, brought an independent action in the district court, invoking its equity powers for an accounting as against the bondsmen, this judgment could have been successfully pleaded as a final adjudication of her rights in the premises, under the authorities, supra. If this judgment could have been so interposed as to a suit subsequently brought by the ward, then the amount of the recovery in said judgment measures their rights under the contract, unless the judgment of the district court was entered, as plaintiffs contend, as an agreed judgment, due to wrongful negotiations between the defendants and plaintiffs' client, without notice to the plaintiffs.

This takes us to an investigation of the record and the form of judgment entered by the district court, and as to whether or not the judgment and findings of the district court were in fact moved by the agreement or stipulation entered into between the ward and the defendants. The record discloses that the trial court refused to enter any agreed judgment, but, after taking testimony on each item presented by the report, stated the account, both as to moneys received by the deceased guardian, item by item, and as to expenditures made, item by item, which showed a balance due from the guardian to the ward of $450, and the recitation of the stipulation which had been offered in evidence that she had been paid that amount by the bondsmen was, as we construe the judgment, merely inserted

therein as the reason for the district court directing the county court to discharge the bondsmen from further liability.

We cannot overlook the statement made by the plaintiffs in their brief (page 17) to the effect that they do not contend that their contract and the stipulation made by defendants with the ward would make the defendants liable under the law for one-third of the amount they expected to sue for; but that they do insist that the evidence offered in the trial of the instant case was sufficient for the trial judge (Judge Arnett) in the instant case to determine that the ward, if she had been left uninfluenced in the hands of her attorneys, would have successfully obtained the judgment against the bondsmen in the sum of $5,498.95. In this connection it must be noted that no suit which they say that they expected to bring was ever filed, and the only proof introduced which could have been intended to have any probative value at all on the possibility of a recovery or the amount thereof, if such intended suit had ever been filed in fact, was the finding made by the county court that $5,498.95 was due from the bondsmen to the ward, and upon this finding of the county court they deduce in their argument that a court of equity, had its jurisdiction ever been invoked in an independent proceeding, would have found that amount. This argument is presented in the face of the argument, immediately preceding in the brief that the county court had no jurisdiction, and its finding and judgment was an absolute nullity. We cannot reconcile the position that this finding had any probative value as to what they would have recovered, had they in fact filed their suit as they contend they intended to do, when the court which made the finding had no power to do anything in regard to the matter. Proof was necessary under Orwig v. Emerick, supra, and on page 7 of response to petition to rehear herein, in commenting on said case, they say:

"Then the court takes up the second part and quotes the second and third divisions above cited. The court then, in that case, goes on to discuss the proposition that it is necessary where a settlement is made before recovery or judgment, that it is necessary for the attorneys to go further and show that their client would have recovered. This was done in the case at bar, and the court found that the plaintiff's attorneys, if they had not been interfered with, would have recovered a certain amount, and fixed the amount that the plaintiff's attorneys were entitled to at one-third of that amount."

We are therefore driven to the conclusion that even if the judgment of the district court in the case appealed by the bondsmen from the county court should be interpreted as they insist it should be, and was actuated entirely by the stipulation secured by the defendants in the instant case, without notice to the plaintiffs, there being nothing in the contract between the ward and the attorneys as to how much the suit was to be brought for, and no competent evidence in the instant suit of any probative value as to what they would have probably recovered, there was in fact nothing adduced in the instant case before the district court on which it could predicate the judgment rendered against the defendants.

For these several reasons, we think that the judgment in the instant case must be reversed, with direction to the district court to enter judgment for the plaintiffs for $225, the amount conceded due them by the defendants.

NICHOLSON, C. J., and HARRISON, MASON, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See 6 C. J. p. 790 §402.